# Voglesong's Estate.

*Will—Probate—Issue devisavit vel non—Testamentary capacity.*

An issue devisavit vel non will not be granted where the testimony of the scrivener of the will, of the two subscribing witnesses and other witnesses is clear and convincing as to the testator's testamentary capacity, and the only evidence to the contrary is that testator would suddenly turn his conversation from one topic to another, that he denied that he had a sister Betsey, although he had a sister named Elizabeth, and that when asked to do something he would answer both yes and no.

Argued April 26, 1899. Appeal, No. 100, Jan. T., 1899, by Thomas F. Voglesong, from decree of O. C. Cumberland Co., refusing issue devisavit vel non, in estate of Thomas F. Voglesong, deceased. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Petition for issue devisavit vel non.

BIDDLE, P. J., filed the following opinion:

A man of sound and disposing memory is one who has a full and intelligent knowledge of the act he is engaged in, a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he designs to make of it, and of the persons and objects he desires shall be the recipients of his bounty. It is not necessary that he collect all these in one review. If he understands in detail all that he is about and chooses with understanding and reason between one disposition and another, it is sufficient for the making of a will. The true question is, were his mind and memory sufficiently sound to enable him to know and to understand the business in which he was engaged at the time when he executed the will? Wilson v. Mitchell, 101 Pa. 495; Miller v. Oestrich, 157 Pa. 264.

Testamentary capacity is the normal condition of one of full age, and the burden is upon him who questions it in a particular case, to establish his position not in a doubtful but in a positive manner: Grubbs v. McDonald, 91 Pa. 236.

In the present case there is no evidence whatever of undue influence and therefore the sole question is whether, upon the

testimony presented by the respective parties, a serious dispute
has arisen as to the testamentary capacity of the alleged testa-
tor; such a dispute as should be submitted to and passed upon
by a jury.  In rightly determining that question there is only
one safe and reliable test.  If the testimony is such that after a
fair and impartial trial, resulting in a verdict against the pro-
ponents of the alleged will, the trial judge, after a careful re-
view of all the testimony, would feel constrained to set aside
the verdict as contrary to the manifest weight of the evidence,
it cannot be said that a dispute, within the meaning of the act,
has arisen.  On the other hand, if the state of the evidence is
such that the judge would not feel constrained to set aside the
verdict, the dispute should be considered substantial, and an
issue to determine it should be directed.  This simple and only
safe test is supported alike by reason and authority: Appeal of
Knauss, 114 Pa. 10; Herster v. Herster, 116 Pa. 612; Harvey's
Estate, 181 Pa. 207.

After a careful examination of the depositions before us, we
have no hesitation in coming to the conclusion that a verdict
against the proponents of the will would be contrary to the
manifest weight of the evidence and could not be sustained by
the court, consequently the granting of an issue would not be
warranted.  It appears that Thomas F. Voglesong, who insti-
tuted these proceedings, is a brother of testator, and that the two
had only met four times in the last five years of testator's life,
yet Thomas said he believed that his brother's mind was "alto-
gether off," because his talk "was from one thing to another;
he would commence a thing and turn around and tell you some-
thing else."  Thomas failed to give any specific instance of
this sudden change of conversational topic and from any point
of view, his testimony is of little value.  As an illustration of
this it may be mentioned, that after stating in regard to his
brother's age, "I guess he was about eighty-nine or something,"
he corrected himself in answer to a leading question from his
attorney and said, "It was seventy-nine I guess; I can't mind
things like I used to."  The principal witness for the contestant
was William P. Eckels, who was married to a sister of testator's
wife, and who, after years of litigation with testator about a
farm, had the humiliation of seeing his antagonist successful.
The witness was never satisfied with the result and averred

upon the stand that Mr. Voglesong got about $273 more than was coming to him. The relations between Mr. Eckels and his brother-in-law were so strained that for many years they had no personal communication with each other, yet at an audit, at which they were both present, Mr. Eckels concluded that Mr. Voglesong "didn't seem to have the mind he ought to have," because he denied that he had a sister Betsey. Upon cross-examination it was developed that he did not have a sister Betsey, but had a sister named Elizabeth, whose full name at the time of the audit was Mrs. Elizabeth Garman. The occasional expressions of the testator during the last few years of his life, that the Eckel's people were still fighting him, can be readily construed to refer to the belief and assertion on their part that he had won an unjust legal victory over them. The only other witness for the contestant whose statements need to be specially noticed, was Samuel McKnight, who, in answer to a leading question (which really invalidates the testimony on this point), said that when the testator was asked to do something, he would answer both yes and no. McKnight's deposition, taken as a whole, amounts to a very little, especially as he finally stated that in the year 1897 the testator seemed to talk all right.

The hypothetical case which was propounded to three physicians embodies averments of fact which are not sustained by the depositions, and therefore the answers are of no value; nor do we find aught of value in the evidence of any of the other witnesses who were called on behalf of petitioner, and we deem it unnecessary to refer to what they said.

The testimony of 'Squire McCord, who wrote the will, and of Dr. Levi Fulk and John H. Paul, who subscribed their names as witnesses thereto, is clear and convincing as to the testator's soundness of mind on April 27, 1897, at the time he executed it. The testimony also of Rev. H. R. Fleck, S. F. Hauck, Samuel Miller and numerous other persons who were brought into frequent contact with testator, showed that up to within a few weeks of his death, he was a good business man, with an intelligent understanding of his estate and of all transactions with which he was connected, and consequently thoroughly competent to make a will. He signed the will by his mark because his eyesight had been bad for sometime, and he wrote his name with great difficulty. It is true that a few weeks before his

death, which occurred on March 24, 1889, he became very feeble
and his mind wandered, but prior to that time his sanity had
not been questioned in his comparatively wide circle of friends
and acquaintances.

After a careful examination of all the testimony submitted,
we see no merit whatever in the present attempt to set aside the
testamentary paper which has been probated.

And now, January 19, 1899, the citation is discharged and
the petition dismissed.

*Error assigned* was the decree of the court.

*R. W. Woods*, for appellant, cited on the question of tes-
tamentary capacity: Towar v. Stillé, 38 Pa. 138; Ketterer's
Est., 17 W. N. C. 16; Palmer's Est., 24 W. N. C. 160; Cul-
bertson's App., 97 Pa. 163; Knauss's App., 114 Pa. 20; Brad-
ley v. Pierce, 190 Pa. 262; Armor's App., 154 Pa. 517; Hers-
ter v. Herster, 116 Pa. 612; Wilson's App., 99 Pa. 545.

*F. E. Beltzhoover*, with him *Fillmore Maust*, for appellee, cited
on the question of testamentary capacity: Grubbs v. McDonald,
91 Pa. 236; Wilson v. Mitchell, 101 Pa. 495; Landis v. Landis,
1 Grant, 248; McCullough's Will, 35 P. L. J. 169; Thomp-
son v. Kyner, 65 Pa. 368; Shaver v. McCarthy, 110 Pa. 339;
Tawney v. Long, 79 Pa. 106; Foster's Est., 142 Pa. 62.

OPINION BY MR. JUSTICE McCOLLUM, May 29, 1900:

This is an appeal from a decree of the orphans' court of
Cumberland county refusing an issue devisavit vel non, in In re
Estate of Samuel Voglesong, deceased. The testimony taken
by the proponents and the contestants of the will occupies 198
pages of the appellant's paper-book, and that part of it taken
by the contestants is intended to establish the following alle-
gations: First, that Samuel Voglesong was not of sound mind
at the time of the execution of the will, and second, that if the
will was executed, it was procured to be executed by fraud and
undue influence, on the part of Mrs. Susan Voglesong, his
widow. We have carefully examined and considered all the
testimony introduced by the contestants to sustain these alle-
gations, together with the testimony submitted by the propo-

nents in answer to them, and our unanimous conclusion is that no sufficient cause is shown for the issue prayed for.

On this appeal the contestant introduced the additional allegation that the will of the deceased was not executed according to law. This allegation, however, has nothing substantial to rest upon, and may therefore be dismissed without comment.

As the learned court below has carefully analyzed and considered the testimony and drawn a correct conclusion from it we need not add anything to what he has so well said in the clear and concise opinion on which the citation was discharged and the petition was dismissed. We therefore overrule and dismiss the assignments.

Decree affirmed and appeal dismissed at the costs of the appellant.